IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAMON WILLIAMS,<br><br>          Plaintiff,<br><br>   v.<br><br>WILLIE BONDS, et al.,<br><br>          Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 18-13253 (JBS-AMD)<br><br>**OPINION** |

APPEARANCES:

Damon Williams, Plaintiff Pro Se
7728363/244972C
New Jersey State Prison
PO Box 861
Trenton, New Jersey 08625

**SIMANDLE, District Judge:**

I. **INTRODUCTION**

    Before the Court is Plaintiff Damon Williams' ("Plaintiff"), submission of a civil rights complaint. [Docket Entry 1]. Plaintiff has also moved for the appointment of pro bono counsel. [Docket Entry 2]. At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915 to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court

concludes that the complaint will proceed in part. The motion for the appointment of counsel is denied without prejudice.

**II. BACKGROUND**

The following factual allegations are taken from the complaint and are accepted for purposes of this screening only. The Court has made no findings as to the truth of Plaintiff's allegations.

Plaintiff alleges that he was standing in the South Woods State Prison ("SWSP") "mess line" at lunch time on July 22, 2018. [Complaint ¶ 9]. As Plaintiff approached the window to receive his meal, Sgt. Miletta approached Plaintiff and ordered him out of the line. [*Id.* ¶ 10]. Following Sgt. Miletta's instructions, Plaintiff exited the line and placed the tuna packets that had been in his pockets on the ground. [*Id.* ¶ 11]. Plaintiff states Sgt. Miletta told him "'Since you so stupid go lock-in.'" [*Id.* ¶ 12]. Plaintiff asked if he could eat first but Sgt. Miletta told him to get on the ground and to place his hands on his head. [*Id.* ¶ 13]. Plaintiff complied and was escorted to a holding cell. [*Id.* ¶¶ 14-15]. Sgt. Miletta took Plaintiff's wristwatch and instructed Officer John Doe to take Plaintiff's socks. [*Id.* ¶ 16].

Plaintiff was later taken to the Emergency Care Unit ("ECU") as he uses a C-PAP machine to treat his sleep apnea. [*Id.* ¶ 17]. The officers did not allow Plaintiff to put on socks or shoes

before taking him to the ECU, forcing him to walk barefoot through rain puddles to get to the ECU. [*Id.* ¶¶ 18-19]. Upon arrival at the ECU, Officer Doe told Plaintiff to get on his knees and strip. [*Id.* ¶ 20]. While Plaintiff was disrobing, Officer Doe grabbed the back of Plaintiff's neck. [*Id.* ¶ 21].

Plaintiff was served with disciplinary charges the next day for refusing a housing assignment, prohibited act .254; and conduct which disrupts, prohibited act *.306.[1] [*Id.* ¶ 27]. *See also* N.J.A.C. §§ 10A:4-4.1(a)(3)(ix), (a)(2)(xxix). He asked that the video footage be presented and that the inmates from the mess line be called as witnesses. [Complaint ¶ 28]. He also asked to speak with the Special Investigation Division ("SID"). [*Id.* ¶ 30]. On July 24, 2018, Plaintiff spoke with a mental health counselor and asked if she could get SID to interview Plaintiff. [*Id.* ¶ 32]. According to the complaint, the counselor advised Plaintiff that she could only call SID if Plaintiff made a complaint under the Prison Rape Elimination Act ("PREA"). [*Id.* ¶ 32]. Plaintiff told the counselor about the events of July 22. [*Id.* ¶ 33].

Some time later, Officer Doe came to Plaintiff's cell and asked him "what shift did the PREA complaint accrue." [*Id.* ¶

---

[1] "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions." N.J.A.C. § 10A:4-4.1(a).

3

34]. Plaintiff denied making a PREA complaint and "Doe told the plaintiff to tell [the mental health counselor] what [Plaintiff] told him." [*Id.* ¶ 35]. Plaintiff spoke with the counselor again and told her he was not making a PREA complaint but wanted to see SID about alleged excessive force. [*Id.* ¶ 36].

Plaintiff was taken to an interview room by SID Investigators Schwartz and Tobolski. [*Id.* ¶ 39]. The officers asked Plaintiff about his PREA complaint, and Plaintiff again denied he wanted to make a PREA complaint. [*Id.* ¶¶ 39-40]. Plaintiff tried to tell them about the strip search and the use of force, but Investigator Schwartz said they'd "'get to that after the PREA complaint.'" [*Id.* ¶ 40]. Plaintiff gave a statement denying that he'd ever stated that he had ever alleged a PREA violation or wanted to discuss PREA with anyone. [*Id.* ¶ 41]. Investigators Schwartz and Tobolski would not let Plaintiff discuss his original complaint and told him to file it on the grievance kiosk. [*Id.* ¶ 42]. Plaintiff was charged with committing prohibited act *.704 (perpetrating frauds, deceptions, confidence games, riots, or escape plots) [*Id.* ¶ 45]. *See also* N.J.A.C. § 10A:4-4.1(a)(2)(xxxiv).

Plaintiff's disciplinary hearing for the .254 and *.306 charges took place on July 25, 2018. [Complaint ¶ 46]. According to the complaint, Hearing Officer Zimmerman did not provide the video footage or interview the inmates who were present in the

4

mess line with Plaintiff. [*Id.* ¶ 47]. The hearing officer did not find Plaintiff guilty of conduct that disrupts, prohibited act *.306, but did find him guilty of refusing a housing assignment, prohibited act .254. [*Id.*]. Plaintiff's hearing on the *.706 charge took place on July 27, 2018. [*Id.* ¶ 50]. He produced a grievance he wrote to SID as evidence. [*Id.*]. Plaintiff alleges Hearing Officer Zimmerman never provided him with a written statement of her findings and the disciplinary action taken for either case. [*Id.* ¶¶ 48, 51]. Plaintiff appealed to SWSP Assistant Superintendent Kippie Langford. [*Id.* ¶¶ 49, 55]. The appeals were denied on July 30, 2018. [*Id.* ¶ 56]. While his appeals were pending, Plaintiff was transferred to administrative segregation at New Jersey State Prison ("NJSP"). [*Id.* ¶ 54]. He alleges he has failed to receive any of his property from SWSP besides the "overnight bag" he took to NJSP. [*Id.* ¶ 59].

Plaintiff alleges that his C-PAP machine has not been functioning properly since his arrival at NJSP. [*Id.* ¶ 64]. He claims it is too hot in his administrative segregation cell for the machine to properly function. [*Id.* ¶¶ 62-64]. He has submitted multiple requests for assistance, but he has not received any response from the NJSP medical department. [*Id.* ¶ 68].

5

Plaintiff raises claims of cruel and unusual punishment, assault and battery, denial of due process, failure to investigate, denial of medical care, and failure to discipline.

**III. STANDARD OF REVIEW**

**A. Standards for a Sua Sponte Dismissal**

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915 because Plaintiff is a prisoner proceeding *in forma pauperis*.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a

pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[2] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

---

[2] "[T]he legal standard for dismissing a complaint for failure to state a claim . . . is identical to the legal standard employed in ruling on 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

**B. Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**IV. ANALYSIS**

**A. Eleventh Amendment**

Plaintiff brings claims against defendants in their individual and official capacities. The claims against defendants in their official capacities must be dismissed with prejudice as barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930–31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). These claims against defendants in their official capacities are dismissed with prejudice. Claims against defendants in their <u>individual</u> capacities remain.

**B. Sgt. Miletta - Eighth Amendment**

Plaintiff alleges Sgt. Miletta violated the Eighth Amendment when he refused to permit Plaintiff to eat his lunch and took his watch and socks. [Complaint ¶ 72].

"A properly stated Eighth Amendment claim must allege a subjective and objective element. First, it must appear from the complaint that the defendant official acted with a 'sufficiently culpable state of mind.' Second, the conduct must have been objectively 'harmful enough,' or 'sufficiently serious' to violate the Constitution." *Ricks v. Shover*, 891 F.3d 468, 473, (3d Cir. 2018) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (internal citation omitted). The Eighth Amendment requires prison officials to "provide humane conditions of

confinement," but it "'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is a part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted).

Plaintiff has failed to allege enough facts to state an Eighth Amendment claim against Sgt. Miletta. Depriving Plaintiff of one meal and personal items before being placed into prehearing detention did not deprive him of the "minimal civilized measure of life's necessities" under the circumstances alleged in the complaint and are therefore not objectively serious enough to state an Eighth Amendment claim. This claim is dismissed for failure to state a claim.

**C. Officer John Doe – Eighth Amendment/Assault**

Plaintiff alleges Officer John Doe also violated the Eighth Amendment when he forced Plaintiff to get on his knees and strip when Plaintiff entered the ECU. [Complaint ¶ 73]. Plaintiff also alleges the state tort of assault when Officer Doe grabbed the back of Plaintiff's neck without provocation. [*Id.* ¶ 74].

Although Petitioner's claim may be considered under the Fourth Amendment's ban on unreasonable searches, the Eighth Amendment is "the primary source of protection after an individual's conviction." *Jordan v. Cicchi*, 428 F. App'x 195, 199–200 (3d Cir. 2011). "The objective component of the excessive force inquiry is met when 'the inmate's injury was more than *de minimis*.'" *Ricks*, 891 F.3d at 480 (quoting *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000)).[3]

Plaintiff has failed to state an Eighth Amendment claim against Officer Doe because he has not met the objective component. The minimal contact the officer had with Plaintiff does not rise to the level of a constitutional violation. The Court declines to exercise supplemental jurisdiction over the

---

[3] Plaintiff also alleged that officers failed to intervene and present the misuse of force. [Complaint ¶ 73]. Because Plaintiff has failed to state an excessive force claim, he has failed to state a failure to intervene claim which requires an underlying constitutional violation. *See Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005) ("Though legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of her excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene."); *Monticciolo v. Robertson*, No. 15-8134, 2017 WL 4536119, at *18 n.14 (D.N.J. Oct. 11, 2017) ("[B]ecause Plaintiff's failure to intervene claim is premised on his claim for excessive force, if there were no excessive force, Plaintiff's failure to intervene claim would necessarily fail.").

state assault claim as it is dismissing the federal claims arising from Plaintiff's time at SWSP. 28 U.S.C. § 1367(c).

**D. Investigators Schwartz and Tobolski – Failure to Investigate**

Plaintiff asserts a claim of failure to investigate against Investigators Schwartz and Tobolski for their alleged failure to investigate the Eighth Amendment violations committed by Sgt. Miletta and Officer Doe. [Complaint ¶ 75].

"[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (internal quotation marks omitted) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989)). *See also Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (per curiam) (holding that failure to process grievances "although not to be commended, does not rise to the level of a violation of a constitutional right. Inmates do not have a constitutionally protected right to the prison grievance process."). The Court has already concluded that Plaintiff has failed to state Eighth Amendment claims against Sgt. Miletta and Officer Doe; therefore, there can be no failure to investigate claim against Investigators Schwartz and Tobolski.

**E. Hearing Officer Zimmerman and
   Assistant Superintendent Langford – Fourteenth Amendment**

Plaintiff alleges Hearing Officer Zimmerman violated his procedural due process rights when she refused to provide him with the video footage and call witnesses on his behalf during his disciplinary hearing. [Complaint ¶ 76]. He alleges there is not sufficient evidence in the record to support the convictions of refusing a housing assignment, prohibited act .254, and perpetrating a fraud, deception, confidence game, riot, or escape plot, prohibited act *.704. [*Id.*]. He states Assistant Superintendent Langford violated his rights by upholding the charges. [*Id.*].

"It is well established that '[p]risoners ... may not be deprived of life, liberty or property without due process of law.'" *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974))(alteration and omission in original). "However, inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Id.* at 170–71 (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Plaintiff is only entitled to procedural due process in his prison disciplinary hearing when the outcome affects a protected liberty interest by "impos[ing] [an] atypical and

13

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'" *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003) (quoting *Sandin*, 515 U.S. at 484). Stated differently, if Plaintiff "had no protected liberty interest in remaining free of disciplinary custody, then the state owed him no process before placing him in disciplinary confinement." *Id.*

According to the complaint, Plaintiff was sanctioned by a transfer to NJSP for confinement in administrative segregation. [Complaint ¶ 54]. "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [for purpose of triggering due process protection]." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 484). There are not enough facts in the complaint for the Court to determine whether a liberty interest was at stake for Plaintiff, entitling him to procedural protections during his hearing. *See Mitchell*, 318 F.3d 523, 532 (3d Cir. 2003) ("In deciding whether a protected liberty interest exists under *Sandin*, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions.").

The facts as stated in the complaint do not state a due process claim, but Plaintiff may move to amend his claim against Hearing Officer Zimmerman in the event he can plead facts indicating he was deprived of a liberty interest under *Sandin*.[4]

Plaintiff's due process claims against Assistant Superintendent Langford for her handling of his appeals also fails. "'[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.'" *Davis v. Eberling*, 742 F. App'x 592, 595 (3d Cir. 2018) (per curiam) (quoting *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)) (alteration in original).

**F. Administrator Willie Bonds – Failure to Discipline**

Plaintiff's final claim against an employee at SWSP is against Administrator Willie Bonds for failing to discipline his employees. [Complaint ¶ 79].

A supervisory defendant may be liable if he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Deliberate

---

[4] Plaintiff must comply with Federal Rule of Civil Procedure 15 in the event he elects to move to amend any of his claims that were dismissed without prejudice.

indifference may be shown through facts that indicate "a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's," or "that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136-37 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)).

Plaintiff has failed to state a claim against Administrator Bonds under either theory of liability. He has not alleged a pattern or practice of violations of this type at SWSP that Administrator Bonds failed to correct prior to July 2018, nor has he sufficiently alleged facts suggesting that risk of constitutional harm was so obvious prior to July 2018 such that disciplinary action was required.

**G. NJSP Staff – Deliberate Indifference to Medical Needs**

The remaining claims in the complaint are against unidentified NJSP John and Jane Doe defendants for failing to provide adequate medical care in violation of the Eighth Amendment. [Complaint ¶¶ 77-78]. The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to

16

adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). Sleep apnea, in severe forms, can be a serious medical condition. Plaintiff uses a C-PAP machine to treat his sleep apnea. The Court presumes for screening purposes only that Plaintiff has alleged a serious medical need.

Construing the complaint liberally and accepting the facts alleged as true, Plaintiff has sufficiently alleged a deliberate indifference claim against the unknown NJSP John and Jane Doe defendants for deliberately ignoring the need for medical treatment of a serious condition by refusing to keep his C-PAP machine in working order. The Court will permit this claim to proceed and will exercise supplemental jurisdiction over the accompanying state law negligence claim.

As these are the only claims that the Court is permitting to proceed, Plaintiff will need to submit an amended complaint identifying the John and Jane Doe defendants so they may be

served with the complaint.[5] Plaintiff shall submit an amended complaint within 45 days of this Opinion and Order identifying the Jane and John Doe defendants whom he claims are liable for deliberate indifference to his need for the CPAP machine.

**H. Motion for the Appointment of Counsel**

Plaintiff moves for the appointment of pro bono counsel. [Docket Entry 2]. Appointment of counsel is a privilege, not a statutory or constitutional right, *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011), and is governed by the factors enumerated in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993).

In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155-56, 157

---

[5] "[A]n appropriate method for the plaintiff to seek the identity of the John Doe defendants is through the use of a subpoena directed to officials" at NJSP. *Gerber v. Various Other Prison Officials*, No. 1:06CV01358, 2007 WL 1847582, at *2 (M.D. Pa. May 10, 2007) (report and recommendation adopted June 25, 2007). Subpoenas are governed by Federal Rule of Civil Procedure 45.

n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144–45 (3d Cir. 2011) (reiterating the *Tabron* factors).

After considering and weighing the *Tabron* factors, the Court will deny Plaintiff's motion. Plaintiff has presented his case in a coherent manner thus far. The remaining issues in the complaint do not appear to be especially complex based on the face of the complaint, and the Court does not anticipate any special difficulty for Plaintiff in presenting his case. Also weighing against appointing counsel is the fact that extensive discovery is not expected. The grievances submitted by Plaintiff should serve to establish his requests for medical care, meaning the case would not be "solely a swearing contest." *Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997). Whether Plaintiff was denied care entirely is a question that should not need expert testimony, but an expert may be needed to establish the standard of care in his negligence claim. This factor weighs slightly in favor of appointing counsel. As Plaintiff is proceeding *in forma pauperis*, the Court accepts that he cannot afford counsel on his own, which also weighs slightly in favor of appointing counsel.

The balance of factors weighs against appointing counsel at the outset of this case. The denial is without prejudice, and Plaintiff may move again for the appointment of counsel if his circumstances change.

## V. CONCLUSION

For the reasons stated above, the official capacity claims are dismissed with prejudice. All defendants except for John and Jane Doe are dismissed without prejudice for failure to state a claim. Plaintiff's denial of medical care and negligence claims against John and Jane Doe will proceed. Plaintiff shall have 45 days to submit an amended complaint with the identities of John and Jane Doe. The motion for pro bono counsel is denied.

An appropriate order follows.

**April 8, 2019**                 **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                        U.S. District Judge